UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ARMOND MCCLOUD, JR,

                Plaintiff,

    -against-                           **ORDER**
                                              23 CV 8341 (NRM) (CLP)

THE CITY OF NEW YORK, *et al.*,

                Defendant.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On November 9, 2023, plaintiff Armond McCloud commenced this action against the City of New York, Carlos Gonzalez, Marianne Herbert, Thomas Wray, Glen Bove, James Girdusky, Joseph Croce, Michael Dempsey, Administrator of the Estate of Vincent Greco, Maureen Kempton, Edward Garnar, Rubin Martinez, Alquimides Arroyo, and John and Jane Doe 1-10, seeking damages pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and the laws of the City and State of New York, based upon plaintiff's wrongful conviction on charges of murder in the second degree and criminal possession of a weapon in the second degree, following a jury trial in Queens County, for which he received a sentence of 25 years to life on April 15, 1996. (Compl.[1]).

       In August 2023, plaintiff McCloud was exonerated after having been incarcerated for 29 years for the August 4, 1994, murder of Kei Sunada (hereinafter "the Sunada murder"). (Compl. ¶¶ 24, 36). The only substantive evidence in plaintiff's criminal case, on which his conviction was based, was plaintiff's confession to the crime. (Id. ¶ 41). Plaintiff confessed to killing

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed November 9, 2023 (ECF No. 1).

1

Sunada after hours of police interrogation, precipitated by the interrogation of several individuals, including one who implicated plaintiff, and plaintiff's eventual co-defendant. (Id. ¶¶ 73, 79, 90, 194). Plaintiff's indictment was dismissed in 2023 in light of the QDA's Conviction Integrity Unit (CIU)'s determination that plaintiff's confession had been coerced by defendant Gonzalez, who had been involved in coercing false confessions in other cases. (Id. ¶¶ 22-24). In November 2023, plaintiff commenced this action bringing federal and state law claims for violations of his rights.

Plaintiff served defendant City of New York with his discovery demands on February 15, 2025. (Pl.'s Mot.[2] at 1). Over the next year and a half, the parties engaged in extended back-and-forth and conferral in an attempt to resolve discovery disputes that arose. (Id. at 2). On August 29, 2025, after defendants cancelled the most recent meet and confer, plaintiffs filed a letter Motion to compel defendants to "comply with their discovery obligations." (Pl.'s Mot.). This Motion is currently pending before this Court. On October 3, 2025, plaintiff filed a second letter with the Court, indicating the status of depositions and the death of defendant Edward Garnar (ECF No. 69). For the reasons set forth below, the Court grants plaintiff's Motion in part and denies it in part.

DISCUSSION

A. Legal Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged material that is relevant to any party's claim or defense

---

[2] Citations to "Pl.'s Mot." refer to plaintiff's Letter Motion to Compel Discovery, filed August 29, 2025 (ECF No. 65).

2

and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Relevancy under Rule 26 has been "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case.'"  Giacchetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 114 (E.D.N.Y. May 6, 2013) (alteration in original) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  In reviewing plaintiff's motion, the Court considers that while the scope of discovery is "broad," it is not "limitless."  Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).  The party seeking discovery must show tha t it is not engaging in "merely a fishing expedition."  Carl v. Edwards, No. 16 CV 3863, 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (quoting Barbara v. MarineMax, Inc., No. 12 CV 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)).

Courts have recognized that plaintiffs bringing a federal civil rights action have a "strong interest in obtaining records relevant to" their claims.  Owens v. County of Monroe, No. 21 CV 6445, 2025 WL 1902225, at *4 (W.D.N.Y. July 10, 2025).  In these cases, there are "strong federal interests in broad discovery and truth-seeking."  Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (internal quotations omitted).

B. Privilege Log

Plaintiff complains that the City has invoked privilege in response to approximately 30 of plaintiff's discovery requests and has made substantive redactions to more than 20 pages of disciplinary summaries.  (Pl.'s Mot. at 2).  Plaintiff seeks an Order compelling the City to produce a privilege log for the withheld material.  (Id.)  As for the redacted materials, plaintiff asserts that defendants refuse to explain the redactions, and indeed, over a year ago, counsel for defendants conceded that she did not know why the redactions had been made.  (Id., n.2).

3

Plaintiff seeks an Order requiring defendants to reproduce the documents in unredacted form by a date certain.  (Id.)

In their response, filed September 8, 2025, defendants decline to provide a privilege log and instead ask the Court to rule on their objections to plaintiff's Document Request Nos. 45, 46, 47 and 49.  (Defs.' Opp.[3] at 3).

Upon review of the parties' arguments, the Court Orders defendants to produce a privilege log to plaintiff and the Court by January 23, 2026, regarding any documents for which defendants claim privilege.  Document Request Nos. 45, 46, 47 and 49 are discussed in more detail below.

Document Request No. 45 seeks all documents relevant to formal or informal complaints made against any NYPD officer or employee concerning their conduct during the course of the investigation or re-investigation of this case or the cases of the other Sunada suspects, including plaintiff's co-defendant, and lists four subcategories of documents:  documents generated, received or maintained by the Internal Affairs division; by any other entity; contained in the NYPD computers; and all information received pursuant to subpoenas during the pretrial and trial stages of this case or that of any other Sunada suspects.  (ECF No. 65-1, Req. No. 45).

Defendants objected on grounds of overbreadth, disproportionality to the needs of the case, and on the grounds that some of the documents sought "may be protected by law enforcement privilege, official information privilege and/or other applicable privileges."  (ECF No. 65-2 at 25).  Defendants indicated in their response that they would provide documents

---

[3] Citations to "Defs.' Opp." refer to defendants' Response in Opposition *re* Letter Motion to Compel Discovery, filed September 8, 2025 (ECF No. 67).

4

relating to civilian complaints of a similar nature, that are otherwise available publicly or involve the officers' character for truthfulness for 10 years prior to the incident, and, if appropriate, the defendants' IAB resumes and CPI's subject to a protective order.  (Id. at 26).

Defendants represent that on August 4, 2025, they produced 950 pages of responsive documents, including personnel files, patrol guide sections, and relevant portions of the NYPD's detective guide.  (Defs.' Opp. at 2).  They are Ordered to confirm in writing by **January 23, 2026**, that they have produced all documents falling into the categories that they have represented in their response they will produce.  Since they have indicated there are documents subject to the privileges set forth above, defendants are also Ordered to provide a privilege log by the same date with respect to any documents withheld pursuant to those or any other privileges, or state that no documents have been withheld on grounds of privilege.

Document Request No. 46 seeks documents concerning any complaints, investigations, and/or disciplinary action brought against any prosecutor in connection with this or any other case involving the Sunada suspects.  (ECF No. 65-1, Req. No. 46).  Defendants' response raises the same objections as to burden, proportionality, and privilege, but unlike in their response to Request No. 45, defendants refuse to provide documents.  (ECF No. 67-2 at 26-27).

Defendants are Ordered to search for and provide any responsive documents in their possession, custody or control.  Again, defendants are Ordered to provide a privilege log by **January 23, 2026**, with respect to any documents withheld on privilege grounds.  To the extent that no responsive documents exist, defendants are to provide a Declaration to that effect.

Document Request No. 47 asks for records of disciplinary action taken against any of the individual defendants as a result of their conduct in this case or the cases of the other Sunada

5

suspects, including plaintiff's co-defendant. (ECF No. 65-1, Req. No. 47). Defendants' response simply refers to their objections and responses to Request No. 45. (ECF No. 67-2 at 27).

This is insufficient and an inappropriate response. Under Federal Rule 34, governing the production of documents, a party objecting to a discovery demand must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). It is well-established that "[a] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden.'" Vidal v. Metro-N. Commuter R. Co., No. 12 CV 248, 2013 WL 1310504, at *1 (D. Conn. Mar. 28, 2013) (quoting Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy" are "a paradigm of discovery abuse." Jacoby v. Hartford Life & Acc. Ins. Co., 254 F.R.D. 477, 478 (S.D.N.Y. 2009).

Here, in objecting to Document Request No. 47, defendants reference their objections and response to Document Request No. 45 (ECF No. 65-2 at 27), without any details or explanation as to why their objections of overbreadth, disproportionality, or privilege apply. Parties are obligated to provide specific grounds for objecting to discovery requests, which includes explaining the nature of the burden they allege prevents them from producing responsive documents. Document Request No. 45 relates to formal and informal complaints against NYPD officers investigating the Sunada suspects, while Document Request No. 47 relates to disciplinary actions against NYPD officers as a result of their conduct in the cases of

6

the Sunada suspects; these document requests, though regarding similar subject matter, are not identical. To the extent that defendants are relying on their response to Request No. 45, their promise to produce certain records was limited to "civilian complaints"; Request No. 47 seeks charges and specifications, command discipline, or minor violations brought by the police department; these may or may not have been related to civilian complaints.

In addition, the Court finds that the request for disciplinary actions connected to this case is not overly broad, nor would it presumably be burdensome; if there are a considerable number of documents related to discipline resulting from this case or the cases of the related Sunada suspects, that fact alone, not to mention the contents of the documents, would be highly relevant to plaintiff's claims. Defendants are Ordered to undertake a search and produce any responsive documents or indicate in a Declaration that all such documents have previously been produced (and provide Bates Nos.) or that no such responsive documents exist.

Document Request No. 49 asks for personnel records with respect to each individual defendant and lists 18 specific categories. (ECF No. 65-1, Req. No. 49). Defendants object on grounds of overbreadth, proportionality, and the fact that the request is not limited in time or scope and seeks information that is unrelated to the incident in question, is private, or may be protected by various privileges, including HIPAA, or sealed pursuant to N.Y. Crim. Proc. L. §§ 160.50/160.55. (ECF No. 65-2 at 29-30). Defendants indicate that they will produce documents limited to civilian complaints as set forth in response to Document Request No. 45. (Id. at 30).

The Court agrees that this request, with its numerous categories, is overbroad. Counsel for plaintiff and defendants are Ordered to meet and confer to narrow the scope of this request. To the extent that defendants continue to withhold documents on grounds of privilege, they must provide a privilege log, to be shared with plaintiff and the Court, by **January 23, 2026**.

7

Plaintiff also notes that the City indicated an intention to supplement responses to eleven of plaintiff's requests and interrogatories by May 6, 2024, but that no such supplementation has occurred. (Pl.'s Mot. at 2, n.3 (citing Ex. 2, Resp. to Doc. Req. Nos. 1-2, 15-16, 21, 26, 45, 49, 61 and Interr. Nos. 5 and 8)). Defendants did not respond specifically to this issue in their September 8, 2025, letter so it is unclear whether their August production has sufficiently responded to plaintiff's concern. Defendants are Ordered to inform the Court via a Declaration by **January 23, 2026**, as to the status of defendants' responses to these eleven requests and interrogatories.

C. Individual Defendants' Responses

Plaintiff also complains that despite being served with discovery demands on May 21, 2024, the individual defendants have not responded, nor have they sought extensions of time from the Court. (Pl.'s Mot. at 3 (citing Exs. 4, 5)). Plaintiff seeks an Order compelling their responses, but notes a willingness to accept verified answers to interrogatories from each defendant, along with a certification that each has read the document requests, conducted a reasonable search, and provided any responsive records to Corporation Counsel. (Id.)

In response, defendants note that most of the requests were duplicative of those served upon the City. (Defs.' Opp. at 3). They have, however, agreed to plaintiff's suggested compromise, thus mooting this issue. Defendants requested thirty days to comply with plaintiff's request.

Defendants are to confirm in writing by **January 23, 2026**, that they have provided these responses.

8

D. <u>Disciplinary and Personnel Records of Defendants</u>

Plaintiff seeks production of the complete personnel and disciplinary files of the individual defendants, many of which are likely maintained in paper files given that the events at issue occurred in the early 1990s. (Pl.'s Mot. at 3). According to plaintiff, despite the demand, "defendants have not even produced a fraction of the summaries available," and even that production has been produced in redacted form without a privilege log. (Id.)

Plaintiff contends that the case law is clear that "'disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable.'" (Id. (quoting <u>Bell v. City of New York</u>, No. 13 CV 5447, 2015 WL 5437306, at *2 (E.D.N.Y. Sept. 15, 2015))).

Defendants respond by citing Local Civil Rule 83.10 of the Southern District of New York, to argue that they are only required to produce CCRB records and the IAB closing report regarding the incident that forms the basis of the complaint, and CCRB and CPI indices of complaints or incidents that are similar to the incident alleged in the complaint or that raise questions about defendants' credibility. (Defs.' Opp. at 4).

Local Civil Rule 83.10 of the Joint Local Rules of the District Courts for the Southern and Eastern Districts of New York explicitly applies to the "Southern District Only." Local Civ. R. 83.10. Even setting aside the fact that the Southern District rule is not binding on this Court, defendants' letter tellingly fails to indicate whether they have even produced documents in conformity with that Rule. Defendants are Ordered to produce the requested disciplinary and personnel records, limited to complaints of a similar nature and misconduct relevant to credibility, whether substantiated or not. To the extent that they withhold or redact documents

9

based on privilege, defendants are required to provide a privilege log or explain in writing the basis for the redactions, by **January 23, 2026**.

    E.  <u>Defendant Gonzalez's Other Cases</u>

Plaintiff seeks information regarding other cases involving defendant Gonzalez beyond those already known to plaintiff: Johnny Hincapie (<u>Hincapie v. City of New York</u>, 18 CV 3432, 2022 WL 2870411 (S.D.N.Y. 2022)) and the Exonerated Five (<u>People v. Wise</u>, 194 Misc. 2d 481, 752 N.Y.S.2d 837 (Sup. Ct. 2002)). (Pl.'s Mot. at 4). Notably, plaintiff further complains that even regarding those two cases known to plaintiff, the City has refused to provide "any documents." (<u>Id.</u>, n.5). Noting that the district court in <u>Hamilton v. City of New York</u>, No. 15 CV 4575 (E.D.N.Y. Oct. 30, 2019), authorized the admission of "similar act" evidence from a former criminal defendant who had also been coerced into a confession by the defendant officer in the case, and permitted cross-examination of the defendant officer as to adverse judicial findings of credibility, plaintiff contends that his need for this information is "paramount" and he should be able to review the other cases involving defendant Gonzalez and question him about them. (<u>Id.</u> (citing <u>Heggs v. City of New York</u>, 17 CV 3234, 2019 WL 13294646 at *3 (E.D.N.Y. Mar. 11, 2019))).

In addition to raising an objection based on the privacy of non-parties, defendants respond by noting that the NYPD does not maintain a list of cases in which Gonzalez was present during a confession. (Defs.' Opp. at 4). At best, defendants state that they could produce a list of arrests made by Gonzalez, but defendants contend that that would not be responsive, nor would it include cases involving confessions where Gonzalez was not the arresting officer. (<u>Id.</u>)

The Court agrees that plaintiff's request for "available information regarding Gonzalez's

10

other cases" (Pl.'s Mot. at 4, n.6) is overly broad. However, as the Court has addressed extensively in its Order dated September 23, 2025 (ECF No. 68), information that could lead to direct evidence of Gonzalez using coercive tactics in other investigations is directly and highly relevant to plaintiff's claims. Thus, while defendants may not have any way to search for such responsive records, if they or their clients are aware of any other matters responsive to plaintiff's inquiry, they are required to identify them. In addition, defendants shall submit a Declaration from NYPD stating that it is impossible to compile a list of cases in which Detective Gonzalez was involved in obtaining a confession. If any recordings of interrogations involving Gonzalez exist, transcripts shall be made and produced, and all such existing transcripts shall be produced, with all identifying information of the interrogated individual redacted. If defendant Gonzalez is aware of any cases in which he was professionally involved, in which an individual allegedly made a confession during Gonzalez's involvement in the case, Gonzalez shall disclose that information. To protect non-parties' privacy, all information involving non-parties shall be produced subject to a protective order, and identifying information shall be redacted as to the names of any non-parties.

F. <u>Officer Photographs</u>

Plaintiff seeks labeled color photographs of the individual defendants, noting that he will be required to reconstruct the overnight hours of his interrogation. (Pl.'s Mot. at 4). Given that no notes were taken during the interrogation, and the interrogators are now much older with appearances that have changed since 1994, the photographs may be useful in refreshing memories. Other courts have ordered the production of such photographs. <u>See, e.g.</u>, <u>Snoussi v. Bivona</u>, No. 05 CV 3133, 2009 WL 701007, *3 (E.D.N.Y. Mar. 10, 2009).

Defendants respond by indicating that they have requested such photographs from the

11

NYPD and will produce them, subject to a confidentiality stipulation, thus mooting this issue. (Defs.' Opp. at 4).

Defendants are directed to notify this Court by **January 23, 2026**, whether these photographs have now been provided.

G.  Precinct Movement Records

Plaintiff also seeks discovery on the sequence of events preceding his interrogation in order to identify witnesses to the process. (Pl.'s Mot. at 5). Although defendants have produced an excerpt from a command log that predates plaintiff's arrest, plaintiff contends that the defendants were obligated to undertake a good faith search for records and either produce them or state that none can be found. (Id. (citing Ex. 2, Resp. to Doc. Req. Nos. 1(o), (p), (v), (x), (z), (aa), (ff), (oo), (pp), and Interrog. Nos. 1-2, 4)).

In responding to this request, defendants suggest that it is merely a "fishing expedition." (Defs.' Opp. at 4-5). Nevertheless, they have produced the command logs from the 110th Precinct for August 3, 1994, through August 5, 1994, and the DD5s which were contained in the District Attorney's Office file. (Id. at 5). Defendants indicate that they have asked for additional command logs and roll calls from August 7, 1994, through August 9, 1994, when plaintiff may have been present in the precinct following his arrest. (Id.)

Defendants are Ordered to confirm by **January 23, 2026**, that these documents have been produced, as well as which records, if any, cannot be located.

H.  Supplemental Discovery Responses

Plaintiff contends that the City was obligated to conduct a reasonable search and respond

12

to plaintiff's discovery requests substantively 18 months ago when the requests were served. (Pl.'s Mot. at 5). Instead, plaintiff asserts that the City "has stonewalled plaintiff with boilerplate responses that it unreasonably refuses to correct." (Id. (citing Ex. 10)). Plaintiff contends that it appears as if defendants' counsel has not even requested the material at issue. (Id.)

Defendants object to plaintiff's supplemental discovery requests, arguing that they are not "reasonable, proportional, or relevant." (Defs.' Opp. at 5). Specifically, defendants object to plaintiff's request for supplemental responses to Document Request Nos. 1, 2-5, 7-10, 12-19, 21-22, 23-48(a-r), 49-58, 60-61, and Interrog. Nos. 1, 2-5, 8-19, 21-22. (Id.)

As discussed above regarding Discovery Request Nos. 45, 46, 47, and 49, boilerplate objections that do not specify the reasons a request might be burdensome, or that the requested information might be privileged or sealed, are improper. To the extent defendants' responses to Document Request Nos. 1, 2-5, 7-10, 12-19, 21-22, 23-48(a-r), 49-58, 60-61 simply incorporate by reference defendants' objections to other requests – for example, defendants' response to Document Request No. 30 (ECF No. 65-2 at 18) simply says "see Objections and Responses to Document Requests Nos. 1-29" – defendants have waived their objections and are Ordered to supplement their responses in accordance with this Order by **January 23, 2026**. As for the requests to which defendants have responded that they are continuing to search for responsive documents (see, e.g., defendants' responses to Document Request No. 1, ECF No. 65-2 at 7), defendants are Ordered to provide an update by the same date, regarding their continued efforts to produce responsive documents. The parties are under an affirmative obligation to supplement their responses to discovery requests when additional information becomes available.

To the extent that defendants argue that certain records are sealed pursuant to state law – for example, the documents relating to the video recordings of statements by the Sunada suspects

13

as mentioned in Document Request No. 61 – the defendants are reminded, as explained in detail in the Court's Order dated September 23, 2025 (ECF No. 68), that "when a plaintiff sues in federal court to vindicate federal civil rights, 'New York state law does not govern discoverability and confidentiality[.]'" Howard v. City of Rochester, 758 F. Supp. 3d 109, 121 (W.D.N.Y. 2024) (quoting King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)); see also Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (holding that "in cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law"). Of course, "in the interest of comity, [federal] courts should attempt to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Manzi v. DiCarlo, 982 F. Supp. 125, 131 (E.D.N.Y. 1997) (quotation omitted); see also Owens v. County of Monroe, No. 21 CV 6445, 2025 WL 1902225, at *2 (W.D.N.Y. July 10, 2025) (quoting Manzi v. DiCarlo); Coleman v. County. of Suffolk, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016), aff'd by, 685 F. App'x 69 (2d Cir. 2017). In federal civil rights cases such as this one, there are "strong federal interests in broad discovery and truth-seeking" which state privilege rules "should not be permitted to frustrate." Crosby v. City of New York, 269 F.D.R. at 274 (internal quotations omitted).

As such, this Court must "balance the deference to be accorded state-created privileges with the need for the information to be protected by the privilege," id. at 275, in determining what records shall be produced. The Court has found that plaintiff has a substantial need for certain information relating to the interrogation of the Sunada suspects, and has found, further, that the privacy interests protected by N.Y. Pen. L. §§ 160.50/160.55, et seq, can be adequately protected by use of a protective order and redactions. Id. (stating that "[t]he worthy goals of Section[ ] 160.50 . . . as well as a litigant's need for pertinent discovery can usually be honored

14

simultaneously by redaction of information that identifies, directly or indirectly, persons entitled to protection under these statutes").

In light of the above guidance, defendants shall supplement their responses by **January 23, 2026**, indicating the status of defendants' continued search for responsive documents. The parties shall submit a Status Report by **January 30, 2026**, identifying which Document Requests still require Court resolution.

I. Gonzalez's Trip to Japan

Plaintiff believes that following the murder of Kei Sunada, the NYPD authorized defendant Gonzalez to travel to Japan with the victim's father to promote gun control efforts. (Pl.'s Mot. at 5). According to plaintiff, the City originally responded that it was searching for such information and would supplement its response, but never did, and now takes the position that the trip was not authorized by the NYPD and there are no responsive documents. (Id. (citing Ex. 10)). Plaintiff seeks an Order compelling Gonzalez to search for responsive records and confer with the City relating to his understanding of the NYPD's role in this trip. (Id.)

In response, the City indicates that as of the date of its response, no documents have been found within the NYPD and no paperwork pertaining to a trip to Japan was found in Gonzalez's personnel file. (Defs.' Opp. at 5). Defendants state that they have asked the NYPD to conduct a further search and will produce any responsive documents found. (Id.)

Defendants are Ordered to confirm by **January 23, 2026**, that such a search has been conducted and that all documents have been produced or that no such documents could be found. By the same date, defendants are also Ordered to confirm that defendant Gonzalez has searched his records and provided any responsive materials.

15

J.  Affirmations

Plaintiff seeks a declaration from defendants relating to the documents that defendants' counsel claims do not exist, describing the search conducted.  (Pl.'s Mot. at 6).  As for those documents that do not exist, plaintiff contends that defendants should be required to provide a sworn certification to that effect.  (Id.)

As set forth above, defendants are Ordered to confirm by way of a Declaration, no later than **January 23, 2026**, that they have conducted a search for responsive documents Ordered by the Court to be produced, and have either produced them or been unable to find any responsive documents.

K.  Depositions

Plaintiff asked that depositions of witnesses be left open in the event that additional documents are produced.  (Id.)  In a letter filed with the Court on October 3, 2025, plaintiff noted that the parties agreed to reschedule depositions to dates in November and December 2025, due to a change in defense counsel, and that plaintiff was awaiting deposition dates for two of the defendants.  (ECF No. 69).  The parties are Ordered to provide a Status Report by **January 30, 2026**, indicating what depositions have been taken, what depositions remain open, and the proposed schedule for completion of depositions.  If plaintiff can show good cause to reopen a deposition based on the late production of documents as Ordered herein, the Court will allow further questioning of specific witnesses.

L.  Death of Defendant Garnar

In his letter of October 3, 2025, plaintiff indicated that defendant Garner has passed away and that plaintiff is in the process of obtaining the information necessary to file a Suggestion of

Death and move for substitution under Rule 25. (ECF No. 69). Plaintiff shall provide a status update on this process in the Status Report due **January 30, 2026**, see supra.

## CONCLUSION

For the reasons set forth above, plaintiff's Motion is granted in part and denied in part. By **January 23, 2026**, defendants shall supplement their responses, make the above-mentioned Declarations and confirmations to the Court, and produce a privilege log to plaintiff and the Court regarding any documents for which they claim privilege. The parties shall submit a Status Report by **January 30, 2026**, indicating what discovery issues remain outstanding.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
December 29, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York