UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ARMOND MCCLOUD, JR.,

                                                Plaintiff,

        -against-

THE CITY OF NEW YORK, et al.,

                                                Defendants.
------------------------------------------------------------------------x

**DECLARATION OF JOANNE M. McLAREN**

23-CV-08341(NRM)(PCG)

      **JOANNE M. McLAREN** declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.      I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department. I assumed day-to-day responsibility for this litigation when the previously-assigned Assistant Corporation Counsel resigned from the Law Department on September 29, 2025.

## *Relevant Background*

      2.      This case arises from the homicide of Kei Sunada in August 1994. Following an extensive investigation and prosecution by the Queens County District Attorney's Office ("QCDA"), Plaintiff was convicted of murder in the second degree on or around March 19, 1996, then sentenced to 25 years to life.

      3.      While incarcerated, Plaintiff brought numerous appeals, claiming, *inter alia*, that his confession was coerced. Those appeals were not successful.

      4.      QCDA re-investigated this case and, in 2023, recommended that the conviction be vacated.

      5.      The New York City Law Department does not represent non-party QCDA in this

litigation. QCDA has made its own document productions in this litigation.

6. The pertinent NYPD documents, over 30 years old, are not electronically stored for the most part and must be searched for manually. *See* Declaration of Amy Robinson, Esq, Director of NYPD's Police Action Litigation Section ("PALS") Unit, dated January 23, 2026 ("Robinson Declaration"), attached hereto as an exhibit.

7. Plaintiff has produced just over 5000 pages in discovery in this case to date.

8. QCDA has produced just over 4000 pages to date.

9. I submit this declaration, to the best of my knowledge, in response to Magistrate Judge Pollak's Order ("the Order") (ECF 72) dated December 29, 2025, dealing with discovery disputes in this case.

10. I have spent significantly more than 150 hours working on complying with the Order.

***Disciplinary Records (Order at 4-7, 9)***

11. <u>Document Request No. 45 (Order at 4-5)</u>: This request seeks all documents relevant to formal or informal complaints against NYPD employees concerning their conduct in this case or the case of other Sunada suspects. Although the Order required Defendants to produce personnel files and disciplinary summaries, "limited to complaints of a similar nature and misconduct relevant to credibility, whether substantiated or not," (Order at 9) in an effort to comply expeditiously with this Order, Defendants are re-producing today, in full, the disciplinary summaries of all defendants named in the Complaint, including IAB resumes and CPIs.[1] Defendants have made no substantive redactions to these summaries,[2] and are withholding nothing

---

[1] Defendants have not yet received the CCRB report of Detective Vincent Greco, which they will produce upon receipt.

[2] The only self-explanatory redactions made were birth dates, ages, and references to medical leave.

on grounds of privilege, therefore no redaction or privilege log is required. Although the Order envisioned that certain of Defendants' documents were to be produced subject to a Protective Order (e.g., Order at 5, 12), Plaintiff has, to date, refused to sign the proposed Protective Order which Defendants sent to Plaintiff on December 2, 2025.[3] Defendants maintain that disciplinary documents should be subject to a Protective Order.

12. Defendants learned of the existence of IAB and CCRB complaints allegedly made by Plaintiff himself in an email from Plaintiff's counsel on December 21, 2025. I have since requested these files but they have not yet been received. Once received, they will be produced forthwith.

13. Plaintiff has requested underlying files for certain disciplinary allegations pertaining to certain individual defendants, about which he has questioned that defendant at deposition. Defendants have been requesting these underlying files from NYPD but, because, in many cases they are decades old, they will take time to locate and copy. Upon receipt and review, Defendants will produce those that have bearing on credibility or involve allegations similar to those at issue in the Complaint.

14. <u>Document Request No. 46 (Order at 5)</u>: This request seeks all documents relevant to complaints against any prosecutor in connection with this case or any other case involving the Sunada suspects. From the report of the Conviction Integrity Unit at QCDA, it does not appear that any prosecutor was implicated in any wrongdoing. Nevertheless, any responsive documents are in the possession, custody, and control of the QCDA, which is not a party to this action, and not the Law Department.

---

[3] Defendants will produce the unredacted disciplinary documents today, in compliance with Judge Pollak's Order, with a Subject to Protective Order legend, and will seek judicial intervention if the parties cannot agree on the contours of the protective order.

15. <u>Document Request No. 47 (Order at 5-7)</u>: Plaintiff seeks documents regarding disciplinary action against NYPD officers in connection with the Sunada case. As outlined above, Defendants are producing unredacted disciplinary summaries, which show that no discipline was imposed on any individual defendant.

***Personnel Records (Order at 7, 9)***

16. <u>Document Request No. 49 (Order at 7, 9)</u>: The previously-assigned Assistant Corporation Counsel produced the personnel files for nine of the twelve individually named defendants, with redactions. The remaining three defendants for whom personnel files were not produced were Lieutenant Glenn Bove, Detective Thomas Wray, and Sergeant Edward Garnar. I have been informed by NYPD that the personnel files for Lieutenant Bove were stored in a facility which experienced severe damage during Hurricane Sandy. The NYPD is in the process of compiling an inventory of salvaged records but cannot make any search of the affected records at this time. A letter from the Personnel Records Unit to that effect is being produced herewith to Plaintiff. Detective Wray's personnel file was also reported to have been destroyed in Hurricane Sandy. Sergeant Garnar's personnel file has been requested and, if available, will be produced upon receipt.

17. The personnel files (over 700 pages) which were previously produced to Plaintiff contain redactions. I have checked some of the files and found the redactions to have been made of personal identifying information ("PII"), including, for example, address and telephone numbers, social security numbers, spousal information, and marriage license numbers. The pages do seem to contain numerous errant redaction blocks covering blank space. The reasons for the substantive redactions I have checked so far all appear to be self-explanatory. Nevertheless, Defendants will re-review the personnel files (deleting the errant redactions) and re-produce them.

4

Given staffing levels and other case deadlines, Defendants cannot complete this task by January 23, 2026, and respectfully request an extra 30 days to complete this process.

18. In accordance with the Order, the parties have met and conferred to narrow the scope of the overly broad request contained in Request No. 49. Plaintiff voluntarily agreed to withdraw subparts a), b), c), h), i), j), l), and m). Defendants object to many of the remaining requests: For example, the syllabi and test and individual scores for all training of all defendants, even those whose sole involvement in this case was driving someone from Lefrak City to the 110th Precinct, are irrelevant and overly burdensome, and all photographs of the defendants is overly broad and burdensome. Defendants maintain that producing the personnel file, an official photograph, and the disciplinary materials cited above for each defendant is appropriate.

***Status of Supplemental Responses to Eleven Interrogatories and Document Requests (Order at 8)***

19. <u>Document Request Number 1</u>: Defendants are producing the 110th Precinct Command Log entries from August 3 through August 10, 1994, today. Defendants respectfully refer the Court to the accompanying Robinson Declaration for information regarding the Detective Squad Blotter or Command Log. Case-specific information pertinent to the Kei Sunada matter would be expected to be contained in the Kei Sunada case file which Defendants obtained, via the NYPD Civil Litigation Unit ("CLU"), from the 110th Precinct. I produced that case file, with no documents withheld, to Plaintiff on or about December 8, 2025.

20. <u>Document Request Number 2</u>: This request seeks documents concerning "interviews, investigations, re-investigations, background checks, arrests, detentions, interrogations and/or prosecutions" of any person in connection with the Sunada case, and lists a variety of people who were not arrested, or even considered as suspects, in the Sunada case. Regarding the three people who were interviewed as potential suspects or witnesses (*i.e.*, Plaintiff;

5

Plaintiff's co-defendant, Reggie Cameron; and K.M., who provided a written statement to the police that he had seen Plaintiff and Plaintiff's co-defendant go up in the elevator with the eventual victim, and return, Plaintiff holding a gun, and Plaintiff's co-defendant holding a wallet, and stated further that Plaintiff confessed to shooting the victim), all documents in the possession, custody, and control of NYPD and the individual defendants (consisting of the three written statements, the two taped oral statements, and DD5s about the statements) have been disclosed to Plaintiff. Furthermore, all unsealed responsive documents regarding L.T., who provided the initial tip that people in the neighborhood named Junior and Reggie (later identified as Plaintiff and his co-defendant) as responsible, have been turned over in Defendants' initial production and by supplemental production on or around December 8, 2025. These documents consisted of one handwritten statement, Detective Wray's DD-5, and the paperwork for L.T.'s arrest on August 8, 1994, for an unrelated robbery. Upon information and belief, QCDA declined to prosecute L.T. for the robbery for which he was arrested on August 8, 1994, so that file is sealed pursuant to N.Y.C.P.L. § 160.50. Should Plaintiff procure an unsealing order from this Court, NYPD will be able to access that file and Defendants can produce it. Otherwise, NYPD has no additional documents to produce in response to Document Request Number 2.

21. In further response to Document Request No. 2, Defendants are producing today the entirety of DOC's files pertaining to Plaintiff in connection with his incarceration in this case. DOC Legal has informed me that they keep documents for 25 years, and they have nothing else in their possession regarding this incarceration.

22. <u>Document Request Nos. 15 and 16</u>: These requests seek documents concerning the notification of various NYPD units and QCDA regarding a homicide. Defendants are producing to Plaintiff today pertinent sections of the Patrol Guide and Detective Guide which NYPD

6

Management Orders and Directives Section identified as responsive to this request.

23. <u>Document Request No. 21</u>: All of the decedent's vouchered property remains in the Queens Property Clerk's Office, with the exception of the money which was deposited in a bank. Documentation of the bank deposit is being provided to Plaintiff today. Decedent's backpack and shirt were not vouchered so no additional documentation pertaining to those items exists.

24. <u>Document Request No. 26</u>: This document request seeks documents pertaining to Detective Gonzalez's trip to Japan following Plaintiff's conviction. Detective Gonzalez was asked to conduct a search for any letter from NYPD authorizing his trip to Japan, or any documents concerning the trip. Detective Gonzalez has stated that he has no responsive records. Further, Plaintiff questioned Detective Gonzalez at his deposition about whether he has any documents about the trip to Japan in his possession and Detective Gonzalez confirmed that he does not. Detective Gonzalez has also signed a declaration attesting that he has no documents responsive to any of Plaintiff's discovery demands in his possession.

25. <u>Document Request No. 61</u>: This document request seeks records relating to the video recording of the statements by plaintiff and the other Sunada suspects during the period August 8th-9th, 1994, including outtakes and any reports, logs, memoranda, etc." Defendants do not have any such documents, other than the videotaped statements themselves, the transcripts thereof, and the DD-5s pertaining thereto, which have already been produced in this litigation.

26. <u>Interrogatory No. 5</u>: This interrogatory seeks identification of all QCDA personnel involved in numerous aspects of the case and its reinvestigation. Defendants have no knowledge of any additional QCDA personnel who participated in any aspect of this case other than those named in the thousands of pages previously produced to all parties by QCDA.

27. <u>Interrogatory No. 8</u>: This interrogatory seeks the names of witnesses of events which took place on August 4, 1994, at the 53rd Street and 7th Avenue Subway Station. Defendants respectfully suggest that this document request reflects a cut-and-paste error. Counsel for Plaintiff represented a man arrested for the brutal murder, in 1990, of a tourist on the 53rd Street and 7th Avenue subway. That is not this case.

* * * * *

28. <u>Individual Defendants' Responses to Discovery Requests (Order at 8)</u>: Defendants are producing, today, verifications from each living defendant that he or she has read the City's responses and objections to the document requests and interrogatories, and that they are true and accurate. Documents from the one defendant who had responsive documents in her possession are also being produced.

29. <u>Defendant Gonzalez' Other Cases (Order at 10)</u>: Plaintiff seeks information regarding other cases in which an arrestee made a confession or admission to Detective Gonzalez other than those already known to Plaintiff (that is, Johnny Hincapie and the Central Park Jogger case). In addition, Plaintiff apparently complains that he does not have information about even those two aforementioned cases about which he does know. Order at 10. Plaintiff has the entirety of potentially responsive materials in the Hincapie case, as Plaintiff's counsel was counsel for Johnny Hincapie in his reversed conviction case against the City and individual defendants, including Detective Gonzalez. Indeed, Plaintiff's counsel referred extensively to Hincapie documents and video statements in the deposition of Detective Gonzalez in this case on January 15, 2026.[4] Likewise, Plaintiff has access to voluminous material from the Central Park Jogger

---

[4] Detective Gonzalez testified at his deposition on January 15, 2026, that he was in the room for only about one or two minutes while Johnny Hincapie's interview and confession was taking place.

8

case, which is publicly available on the City's website,[5] www.nyc-cpj-org, which reproduces documents in four main categories: the federal civil litigation;[6] the NYPD Reinvestigation; the Manhattan District Attorney's Reinvestigation; and the original investigation and prosecution.

30. Regarding other cases in which Detective Gonzalez was present when a confession was elicited, Detective Gonzalez informed me that he obtained statements from people who confessed to crimes on occasions when he was working sporadic Night Watch shifts, probably in the 1980s. Detective Gonzalez stated that he is not able to determine when he covered these shifts, or where, or from whom he received incriminating statements during those shifts. Nevertheless, Detective Gonzalez recalled one case in which he obtained a confession from several individuals in a murder in Central Park. There is a reference to what is believed to be this case in Detective Gonzalez' personnel file (already produced to Plaintiff). We have requested the case file from the NYPD and, upon receipt, will review the file to determine whether there is any recording of an interrogation which Detective Gonzalez conducted, or in which he participated, contained therein. If so, consistent with the Order, Defendants will make and produce a transcript of the recording with identifying information of the interrogated parties redacted.

31. <u>Officer Photographs (Order at 11-12)</u>: Defendants respectfully refer the Court to the accompanying Robinson Declaration.

32. <u>Precinct Movement Records (Order at 12)</u>: Defendants are producing the 110th Precinct Command Log entries from August 3 through August 10, 1994, today. NYPD has informed us that roll calls prior to 2011 have been destroyed.

---

[5] Upon information and belief, 100,000 pages are available on the website.

[6] Among other documents, the federal civil litigation section reproduces over 90 deposition transcripts.

***Document Requests In Which Defendants State that They Were Continuing to Look for Documents***

33.     <u>Document Request No. 3</u>:  This request pertains to Kendo McDonald and his alleged cooperation in this case.  Defendants know of no other documents which have not been produced.

***Document Requests for Which the Order States that Defendants' Objections Were Waived***

34.     The Court stated that Defendants waived their objections to requests to which the Defendants' sole response was to refer to objections interposed to other requests, and ordered Defendants to supplement their production.  Defendants respond below to requests meeting that criterion which have not been addressed elsewhere in this Declaration.

35.     To the extent that NYPD has any documents responsive to Document Request Numbers 5, 7, 9, 10, 14, 18, 19, and 50, and case-specific documents responsive to Document Request No. 1, in its possession, custody, or control, upon information and belief, they would be contained in the Kei Sunada file which was produced to Plaintiff on or about December 8, 2025.

36.     In response to Document Request No. 8, requesting all physical evidence and items gathered or obtained in connection with this case or the cases of the other Sunada suspects, Defendants respond that the evidence vouchered on Property Clerk's Invoice F528801 (with the exception of the currency) is still available at the Queens Property Clerk.

37.     In response to Document Request No. 8 (above) and Document Request No. 60 (seeking records relating to civil litigation brought by Reggie Cameron), Defendants respond that the documents which Defendants produced in their Initial Disclosures to Reggie Cameron in his civil litigation are being produced to Plaintiff in today's production, and that further documents, including the Reggie Cameron QCDA file, and the Reggie Cameron materials on the court docket, are equally available to Plaintiff as to Defendants.

38. QCDA is the proper party to which the following requests should be posed: Request No 1 bb. (DA decline to prosecute letters and dismissal memoranda); Request No. 1 nn. (records and briefs on appeal, which are more easily available to Plaintiff than to Defendants); Request No. 13 (trial or hearing exhibits or mock-ups), Request No. 24 (pertaining to statements and documents prepared by QCDA in connection with the re-investigation of this case) (likely all non-privileged responsive material was already produced by QCDA in this matter); Request No. 29 (documents generated by QCDA in the course of the reinvestigation of this case); Request No. 31 (regarding the "final report or other summary of findings . . . including all documents submitted to D.A. Melinda Katz"); Request No. 38 (press releases prepared by prosecutors or QCDA); Request No. 43 (training provided to certain ADAs); Request No. 53 (any re-investigation of the case before the CIU re-investigation); and Request No. 54 (personnel and disciplinary records of various ADAs).

39. In the Kei Sunada file, Defendants already produced material pertaining to the equivocal identification of K.M. by David Kurtz (Document Request No. 21). Defendants are looking for the complete David Kurtz file, as indicated in the Robinson Declaration. What, if anything, QCDA conveyed to Plaintiff about the David Kurtz matter is a matter properly addressed to QCDA.

40. Many of the requests seek correspondence between the individual defendants and various entities including the Parole Board, the Department of Corrections, members of QCDA etc. The individual defendants state in their verifications that they do not have any responsive documents which they have not turned over to the Law Department.

\* \* \* \* \*

***Depositions***

41. Depositions: Defendants have produced for deposition all nine living defendants, and thus have completed all possible depositions originally noticed by Plaintiff. On January 5, 2026, Plaintiff for the first time indicated that he wished to depose six other NYPD and QCDA witnesses (ADA Jack Warsawsky, ADA Kim Marcus, Queens Homicide Sergeant Kim Schreiner, 110th Precinct Captain Kevin McBride, 110th Precinct Robbery Investigation Detective Teresa Troise and "Lane"), all mentioned in the files which he has possessed for many years. Defendants are investigating to determine the whereabouts of these individuals, likely retired, but have not yet proposed dates for these depositions.

42. Defendants intend to depose Plaintiff, his co-defendant, his alleged alibi witness and others pertinent to the case. We will seek Plaintiff's availability to be deposed and intend to serve the other non-parties with subpoenas in the near future.

Dated: New York, New York
       January 23, 2026

                                                s/    *Joanne M. McLaren*
                                                Joanne M. McLaren